**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern District**

| | | |
|---|---|---|
| **LOREN BROWN, et al** | * | |
| **Plaintiffs** | * | |
| -v- | * | Civil no.:  RDB-11-00609 |
| **OFFICER GAHIJI A. TSHAMBA, etal** | * | |
| **Defendants** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RESPONSE TO MOTION TO DISMISS OF DEFENDANT, MAYOR & CITY COUNCIL

### FACTS

On January 14, 2011 the Plaintiffs, Loren Brown and Vivian Scott, individually and as Personal Representatives of the Estate of Tyrone Brown, Loren Brown on behalf of her minor daughter, …., and Jacquetta Taylor on behalf of her minor son, …., filed suit in the Circuit of Maryland for Baltimore City against the Mayor and City Council of Baltimore ("MCC"), as well as the State of Maryland (the "State"), Baltimore Police Commissioner Bealefeld, the Baltimore Police Department ("BPD"), John Doe Officers and Gahiji Tshamba (hereinafter "Tshamba") for the June 5, 2010 murder of Tyrone Brown ("Mr. Brown").  The Plaintiffs brought suit against the above named Defendants for Wrongful Death, Violation of Articles 24 and 26 of the Maryland Declaration of Rights, Survivor's Action, Assault, Battery, False Imprisonment, False Arrest, Intentional Infliction of Emotional Distress, Funeral Expenses and for violations of 42 U.S.C. §1983.  The MCC removed the case to the United States District Court for the District of Maryland.

On the early morning hours of June 5, 2010, Mr. Brown was with his sister, Chantay Kangalee, and a neighborhood friend. As the trio was standing in line outside of Eden's Lounge located at 15 West Eager Street, Baltimore, Maryland, Mr. Brown had an exchange with one of Tshamba's female companions. Her expression of displeasure led Defendant Tshamba to turn around, and he began shouting threats at Mr. Brown and simultaneously drew his weapon pointing it at Mr. Brown. Mr. Brown repeatedly apologized to Defendant Tshamba. With his weapon drawn, Tshamba backed Mr. Brown down an alley out of the eyesight of the police and others who were in the area. While Mr. Brown had his hands raised in the air and attempted to calm down the enraged Defendant Tshamba, Defendant Tshamba fired his weapon 13 times with 12 of the shots striking Mr. Brown and ultimately killing him (¶¶ 14-27 of Plaintiffs' Complaint).

The policies and regulation of the Defendants, MCC, the BPD, and Baltimore Police Commissioner Bealefeld, require Baltimore City Police Officers to carry their service weapons while they are off duty in the City limits (¶41 of Plaintiffs' Complaint). The MCC, the BPD, and Baltimore Police Commissioner Bealefeld are to ensure that persons that have the authority to carry loaded weapons as part of their official capacity are fit to do so. The MCC, the BPD, and Baltimore Police Commissioner Bealefeld failed to supervise and to take the appropriate action of discharging Defendant Tshamba once they were made aware of several serious incidents, as stated in paragraph 43 of the Plaintiffs' Complaint, in which Defendant Tshamba displayed gross lapses in judgment.

Four such incidents that were listed in the complaint in ¶43 were: (1) a 1998 shooting of a suspect in the back that he mistakenly believed had opened fire, (2) a 2001 arrest in which he transported a woman to Central Booking after a routine traffic stop, who he alleged improperly signed a ticket. The City later agreed to pay the woman an undisclosed settlement as a result of

her serious injury from Defendant Tshamba's conduct; (3) a 2005 shooting of a 17 year old in the foot while his blood alcohol level was significantly over the legal limit, and (4) a 2006 crash in which he lost control of his car which was uninsured and unregistered and jumped the curb at a gas station running into a light pole and a parked van.

The MCC, the BPD, and Baltimore Police Commissioner Bealefeld's failure to take the necessary action against Defendant Tshamba allowed him to continue to have lapses in judgment which escalated from improper arrests of citizens, to shooting and wounding citizens while intoxicated.

## STANDARD OF REVIEW

"[T]he purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Wright & Miller, Federal Practice and Procedure:* Civil 3d§1356 @ p. 354 citing, among other cases, the cases of *Miller v. Pacific Shore Funding,* D.C.Md. 2002, 224 F. Supp. 2d 977, *affirmed* C.A.4th, 2004, 92 Fed. Appx. 933; *Eniola v. Leasecomm Corp.,* D.C.Md. 2002, 214 F. Supp.2d 520; *Svezzese v. Duratek, Inc.,* D.C.Md. 2002, 2002 WL 1012967, *affirmed* C.A.4th, 2003, 67 Fed. Appx. 169; *HQM, Limited v. Hatfield*, D.C.Md. 1999, 71 F.Supp.2d 500; *Smith-Berch, Inc. v. Baltimore County, Maryland,* D.C.Md.1999, 68 F. Supp.2d 602; *Maryland Minority Contractor's Ass'n, Inc. v. Maryland Stadium Authority,* D.C.Md.1998, 70 F.Supp.2d 580, *affirmed* C.A.4th, 199, 198 F.3d 237; *Bender v. Suburban Hosp.*, D.C.Md.1998, 998 F.Supp. 631, *affirmed* C.A.4th, 1998, 159 F.3d 186; *National Fed'n of the Blind, Inc. v. Loompanics Enterprises, Inc.,* D.C.Md.1996, 936 F.Supp. 1232; *Ginsubrg v. Agora, Inc.,* D.C.Md.1995, 915 F.Supp. 733; *Foxglenn Investors Ltd. Partnership v. Housing Authority for Prince George's*

*County,* D.C.Md.1993, 844 F.Supp. 1078 *affirmed* C.A.4th, 1994 35 F.3d 947; *Pinder v. Commissioners of Cambridge in the City of Cambridge,* D.C.Md.1993, 821 F.Supp. 376, reversed on other grounds C.A.4th, 1995, 54 F.3d 1169.

"[F]or purposes of the Motion to Dismiss (1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader…" *Wright & Miller, Federal Practice and Procedure:* Civil 3d §135 @ p. 417, citing, among other cases, the cases of *Miller v. Pacific Shore Funding,* D.C.Md. 2002, 224 F. Supp. 2d 977, *affirmed* C.A.4th, 2004, 92 Fed. Appx. 933; *Kress v. Food Employers Labor Relations Ass'n,* D.C.Md.2002, 217 F.Supp.2d 682; *Eniola v. Leasecomm Corp.,* D.C.Md. 2002, 214 F. Supp.2d 520*; Gray v. Metts*, D.C.Md.2002, 203 F.Supp.2d 426; *Rhee Bros., Inc. v. Han Ah Reum Corp.,* D.C.Md.2001, 178 F.Supp2d 525; *U.S. ex rel Ackley v. International Bus. Machs. Corp.*, D.C.Md. 2000, 110 F.Supp.2d 395.

The Supreme Court has gone so far as to hold in *Atlantic Corporation v. Twombly,* 127 S.Ct. 1955, 550 U.S. 544, 167 L.Ed 2d 929 (2007) that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the Complaint."

In their "Introduction" portion of their Motion to Dismiss, the MCC make the following unsupported assertions:

1. "The City is not mentioned in any substantive allegation of the Complaint as haven [sic] done anything."

2. In addition to the undisputed fact that this case involved the off-duty and intentional conduct of an individual who just happens to have been employed by the Baltimore Police Department, it is well established as a matter of law that the Baltimore

Police Department is a State institution run by employees of the State and not a City institution run by agents or officials of the City.

Turning to the first assertion, the MCC goes on to argue that the "Complaint does not identify any fact, as required, regarding any acts, policies or procedures of the City which made Defendant Tshamba shoot Mr. Brown;" however, in the following paragraph the MCC quote from the Complaint the following:

> "the City exercised control over and influenced the policies, practices and customs of the police department, as well as the training, supervision, control and discipline of police officers."

The quote is prefaced by the comment that the "Plaintiffs' assume." Such an assertion is irrelevant to any argument at this stage of the pleadings as a Court ruling on a Motion to Dismiss must assume the truth of the Plaintiff's well-pleaded, material and relevant facts and all inferences that can be drawn from there. *Wright & Miller, Federal Practice and Procedure: Civil 3d §135 @ p. 417*. Furthermore, the Complaint alleges with specificity in paragraph 10:

> "Defendant, BALTIMORE POLICE DEPARTMENT (hereinafter 'BPD') is a fully operational police department, has strong practical links to and was, at all times relevant to this action, acting under the auspices of Defendant, Mayor & City Council, and Defendant Bealefeld. The Mayor appoints the Commissioner Of the Police Department with the advice and consent of the City Council. The City Council holds hearings on Police Department policy and sets the Police Department budget. At all times relevant herein, BPD exercised control over and influenced the policies, practices and customs of its police force, as well as the training, supervision, control and discipline of its police officers. BPD is and was the

employer of the Defendant Tshamba. The BPD is sued in its official capacity."

The specific policies which the Complaint alleges resulted in the unfortunate death of Mr. Brown are indicated in paragraph 41, paragraph 43 and paragraph 44 and are set forth below:

"41.  The policies and regulations of Defendants, BPD, and/or Bealefeld and/or MCC's generally require City officers to carry their service weapons while they are off duty inside the City limits."

"43.  The Defendants, BPD, and/or Bealefeld and/or MCC, and other high ranking members of the Police Department, including colonels, majors, precinct captains, and lieutenants and sergeants engaged in supervision of police patrol activities knew or should have known of Defendant Tshamba's prior incidents which certainly raised questions of Defendant's fitness for duty. These incidents include:

   A.  September, 2005 Defendant Tshamba shot a man in the foot while Defendant was intoxicated. That shooting was ruled justified but Defendant was disciplined internally for having his gun while intoxicated.

   B.  In July, 1998 a disputed incident which was initially reported that Defendant Tshamba mistakenly believed 'the suspect he was chasing had opened fire' and he shot the suspect in the back.

   C.  In 2001, Defendant Tshamba arrested a woman after a routine traffic stop and sent her to Central Booking and Intake Center for 'allegedly signing the ticket improperly' for which an 'undisclosed civil settlement was made with the City in 2005.

        D.     In 2006, Defendant Tshamba was driving at 2:00 a.m. in the 4100 block of Pulaski Highway and was involved in an accident. He was driving without insurance or registration. Defendant Tshamba's vehicle hopped the curb and crashed into a van and a City light pole at a gas station. The Defendant required treatment for his injuries and was transported by ambulance to a local hospital.

44.     Based on Defendant Tshamba's history and violation of law, Defendant should have been relieved of his duties completely."

The second allegation contained in the "Introduction" portion of the MCC's Motion to Dismiss has two parts. The first relates to their assertion that it is undisputed that the case involves the actions of an off-duty police officer. This is not correct.

Paragraph 5 of the Complaint sets forth that "Defendant Tshamba was acting individually and in his <u>official capacity</u> as the agent, servant and employee of Defendant, Baltimore Police Department, and at the times pertinent to this occurrence as the agent, servant and employee of the Baltimore Police Department and/or Commissioner Frederick H. Bealefeld, III, herein named as a defendant." (emphasis supplied)

A reference to Defendant Tshamba's being off-duty in paragraph 40 is prefaced by the words, "[p]rior to the incident."

In the second part of the allegation, Mayor & City Council argue "that the BPD is a State institution run by employees of the State and not a City institution run by agents or officials of the City."

Maryland Cts. & Jud. Proc., §5-301 (referred to as the Local Government Tort Claims Act) provides, *inter alia,* the definition of local government in (d) which includes at ¶ (21) "The Baltimore City Police Department."

Also, the appellate courts of Maryland have held that employees of the Baltimore Police Department are local government employees under the Local Government Tort Claims Act. *Smith v. Danielczk,* 400 Md. 98, 928 A.2d 795 (2007); *Houghton v. Forrest,* 183 Md. App. 15, 959 A.2d 816 (2008), certiorari granted 407 Md. 529, 967 A.2d 182, affirmed in part, vacated in part 412 Md. 578, 989 A.2d 223.

The issue of the connection between the MCC and the BPD has been addressed by the Court many times, with differing results.  Some opinions have found that "the Baltimore City government does not wield enough control over the Baltimore Police Department to be subjected to liability for the Baltimore Police Department's actions." *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 549 (D. Md. 2003); other opinions, however, have reached the exact opposite conclusion.  In *Hector v. Weglein*, 558 F. Supp 194 (D. Md. 1982), the Court, concluding that the BPD is an arm of the MCC, recognized and discussed the substantial control exercised by the City over the BPD.

In *Alderman v. Baltimore City Police Department*, 952 F. Supp. 256, 258-59 (1997), the same Court found that "the City exercises a significant degree of control over the BCPD," and concluded that the "BCPD is an arm of the City, not the state." *Alderman* is significant because it described a framework in which to evaluate whether an entity is to be categorized as a state or local entity.  The *Alderman* Court stated that the following factors should be considered (1) whether the state treasury will pay the judgment, (2) whether the agency exercises a significant degree of autonomy from the state, (3) whether the agency is involved in local versus statewide

concerns, and (4) how the agency is classified under state law. The first of these factors is largely, if not wholly dispositive. *Id.* at 258.

Based on these factors, the *Alderman* Court concluded that the BPD is an agency of the MCC. The Court reasoned as follows: (a) that there was no evidence to show that the state treasury would be affected, but rather that the City of Baltimore has an indemnity agreement with BPD employees; (b) that the MCC exercises significant control over the BPD, for example, in determining how many employees to hire, reviewing employment applications, setting salaries, offering medical insurance, providing legal defense when sued, indemnify for legal expenses and conducting the training of officers at the BPD academy. The City further appoints the Police Commissioner, expects regular reports, and has removal power over the Commissioner; (c) that the functions of the BPD are unquestionably local in that its law enforcement duties and powers are limited to the City; (d) that although state law classifies the BCPD as a state agency, this determination is not, and should not be considered, determinative of the issue of agency and it would be a mistake to treat state court decisions as so. *Id.*

Were there any doubt of the <u>absolute</u> control that the Mayor exercises over the Baltimore Police Department, the doubt was set aside as of June 1, 2009 when by way of House Bill 92 and Senate Bill 180, both entitled an act concerning **Baltimore City – Authority of Mayor to Remove Police Commissioner**, the Maryland legislature enacted the following:

### The Charter of Baltimore City

Article II- General Powers

The Mayor and City Council of Baltimore shall have full power and authority to exercise all of the powers heretofore or hereafter granted to it by the Constitution of Maryland or by any Public General or Public Local Laws of the State of Maryland; and in particular, without limitation upon the foregoing, shall have power by ordinance, or such other method as may be provided for in its Charter, subject to the provisions of said Constitution and Public General Laws:

To have and exercise within the limits of Baltimore City all the power commonly known as the Police Power to the same extent as the State has or could exercise [said] **THAT** power within [said] **THE** limits of **BALTIMORE CITY;** provided, however, that no ordinance of the City or act of any municipal officer, **OTHER THAN AN ACT OF THE MAYOR PURSUANT TO ARTICLE IV OF THIS CHARTER,** shall conflict, impede, obstruct, hinder or interfere with the powers of the Police commissioner.

### Article 4 – Baltimore City

(e)  The Police Commissioner is subject to removal [by] **AT THE PLEASURE OF** the Mayor [for official misconduct, malfeasance, inefficiency or incompetency, including prolonged illness, in the manner provided by law in the case of civil officers], **AS PROVIDED IN SECTION 6(C) OF ARTICLE IV OF THE CHARTER OF BALTIMORE CITY.**

SECTION 2. AND BE IT FURTHER ENACTED, That this Act shall take effect June 1, 2009.

**Approved by the Governor, April 14, 2009**

The Maryland Legislature thereby giving the Mayor ultimate control over the police commissioner by authorizing the removal of the police commissioner AT THE PLEASURE OF THE MAYOR.

The legislative changes have thereby amended the Charter of Baltimore City to read as follows:

### ART. II §27 (Police Power)

To have and exercise within the limits of Baltimore City all the power commonly known as the Police Power to the same extent as the State has or could exercise that power within the limits of Baltimore City; provided; however, that no ordinance of the City or act of any municipal officer, other than an act of the Mayor pursuant to Article IV of this Charter, shall conflict, impede, obstruct, hinder or interfere with the powers of the Police Commissioner.
(Chs. 39 and 40, Acts of 2009)

and changed the Code of Public Local Laws of Baltimore City, Article IV, Maryland Code of Public Local Laws, §16-5(e) Removal to read as follows:

The Police Commissioner is subject to removal at the pleasure of the Mayor, as provided in §6(c) of Article IV of the Charter of Baltimore City.

Therefore, the claims against the MCC should not be dismissed because the Baltimore Police Department is an agency, arm and instrumentality of the MCC and not the State of Maryland for §1983 purposes, and not entitled Eleventh Amendment Immunity.

In their argument portion of the MCC's Motion to Dismiss, they once again raise the issues of Baltimore Police Department being an agency of the State and that Baltimore City can have no direct liability for the conduct of a State employee.  Plaintiffs have previously addressed these issues and therefore would adopt their previously stated arguments but would point out that apparently the MCC loses sight of the fact that their Motion is one to dismiss and not for summary judgment as they argue in the last paragraph of page 7 of their memorandum.

The MCC next argue that the City is immune for State claims arising from the operation of a police department because they are immune from suits for alleged state tortious conduct arising out of governmental, rather than proprietary functions.  The law in Maryland is clear that, for purposes of the assertion of public official immunity, whether an official's actions are discretionary depends on whether the official acted by his own judgment or conscience (discretionary) or whether the conduct involved actions and/or omissions controlled by the judgment and/or conscience of others (ministerial). *see James v. Prince Georges County,* 288 Md. 318 (1980); *Biser v. Deibel*, 128 Md. App. 670 (1999).

In the case at bar, the MCC's actions were ministerial in nature because, given the special facts and reasonable inferences to be drawn in this case, discharging Tshamba and denying him his service weapon was a measure provided for by Statute and not a measure that involved any appreciable degree of the MCC's personal judgment or discretion.

While the duty for issuance of gun permits is incumbent upon the Secretary of State Police, it is only logical that the MCC would oversee the administrative task of determining

which officers should retain and/or be eligible for weapons carrying permits.  Indeed, Maryland gun law sets forth clear and unambiguous statutory provisions regarding the issuance of gun permits and fitness to carry handguns which is found in the Annotated Code of Maryland at Public Safety, §5-306(a)(5)(i) which states, among other pertinent restrictions, that handgun permits are <u>not</u> to be issued to persons who have, based on the results of an investigation, "exhibited a propensity for violence or instability which may reasonably render the person's possession of a handgun a danger to himself or to another."  The Statute, in effect, leaves no room for discretion with regard to allowing persons to retain and/or obtain gun-carrying permits.  Accordingly, the language of the aforesaid statute minimizes the level of discretion on the part of the MCC and shows that the MCC's alleged actions and/or omissions were ministerial in nature.

Were the Court to conclude that the MCC are correct in their assertions, such a finding would be in violation of *Article 19 of the Maryland Declaration of Rights*.

The MCC's interpretation would be illogical since no governmental entity would be held responsible or answerable in Court for the acts of Baltimore City Police Officers.

Also, the MCC argue that the test for determining whether an activity is governmental or proprietary depends on "whether the act performed is for the common good of all or for the special benefit or profit of the corporate entity," *M&CC Memorandum in Support of Motion to Dismiss at p. 8*, would prevent recovery by Plaintiffs.  Based on the facts alleged in the Complaint, the actions challenged in this case absolutely cannot be maintained as acts for the common good.  The shooting of an unarmed citizen by an Officer known to drink, to abuse his police powers by use of deadly and excessive force as well as other means and the lax self-serving initial investigation of that shooting were, as Plaintiffs have alleged, the product of malice and animus for the benefit of the Defendants only and contrary to any notions of public

good or service. (Had the shooter been a private citizen, he would have been immediately arrested!)

The MCC next argued that the Complaint fails to allege a policy or practice of the City that could support a constitutional claim.

On pp. 2-4 of this Memorandum, Plaintiffs have previously referenced ¶¶ 10, 41, 43 and 44 of the Complaint which set forth with specificity those policies and practices which support the constitutional claim.

The Defendants are correct that a *Monell* claim cannot be based upon *respondeat superior* liability; however, the Plaintiffs are not a pursuing a *Monell* claim based upon *respondeat superior* liability.  The Plaintiffs are not contending that the MCC are vicariously liable under §1983 merely because of alleged employment relationship with Defendant Tshamba. Rather, the liability of MCC is as set forth in the Complaint, premised solely upon their own acts and omissions.  As to *Monell* liability, the Defendants' argument that the Plaintiffs have failed to allege facts sufficient to state a *Monell* claim is, as will be demonstrated is flawed.

"A municipality is only liable under [§1983] if it causes such a deprivation through an official policy or custom."   Stated otherwise, "municipal liability results only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Spell v. McDaniel*, 824 F. 2d 1380, 1385 (4th Cir. 1987), *citing Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 692-94 (1978).  Municipal policy is often expressed in the local ordinances and regulations, but "may also be found in formal or informal *ad hoc* decisions of municipal officials authorized to make and implement municipal policy." *Spell* at 1385, *citing Monell* at 694.  Policy "in this context implies most obviously and narrowly a 'course of action consciously

chosen from among various alternatives respecting basic governmental functions, as opposed to episodic exercises of discretion in the operational details of government." *Spell* at 1386.

Official policy, however "is not the only basis for imposing municipal liability. 'Custom or usage' in the specific language of §1983, may also serve." *Spell* at 1386, *citing Monell* at 690-91. *Carter v. Morris*, 164 F. 3d 215, 218 (4th Cir. 1999), a case relied upon by the Defendants, stated "a municipal custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.*, citing *Monell* at p. 691. "Because municipal liability," the *Spell* Court remarked, arises only "when the municipality itself can be directly charged with fault for a constitutional violation, it results only when policy or custom … is (1) fairly attributable to the municipality as its 'own' and is (2) the "moving force behind the particular violation." *Id.* at 1387. Some of the policy decisions, customs and usages by the MCC, were set forth in the Complaint and in relevant portion is described in ¶41 as follows:

> "41.   The policies and regulations of Defendants, BPD, and/or Bealefeld and/or MCC's generally require City officers to carry their service weapons while they are off duty inside the City limits."

That the MCC were fully aware of the prior activities and lack of judgment on the part of Defendant Tshamba by reason of a settlement by the City as a direct result of his improper actions arising out of his conduct which was described in the Complaint at ¶43(C).

Relevant case law indicates that each of these acts and/or omissions of the MCC may serve as basis for a *Monell* claim. The first basis of *Monell* liability, set forth in ¶ 43 of the Complaint, is essentially that the MCC did not adequately scrutinize the background of Defendant Tshamba. This basis can be referred to as "inadequate scrutiny." The next basis of

*Monell* liability is that the MCC acquiesced in, tolerated, and failed to adequately correct and remedy the wrongful, improper and unconstitutional acts and/or omissions of Defendant Tshamba, whose misconduct was persistent and widespread. This basis can be referred to as "condoned custom."

Finally, the third basis the MCC failed to properly and adequately supervise, discipline, train or re-train, and/or monitor the direct Defendants in the face of persistent and widespread misconduct, can be referred to as "deficient training." Each of these actions or inactions is a valid and viable ground upon which a *Monell* claim may be based and will be discussed in turn.

In *Bryan County v. Brown*, 520 U.S. 397, 410 (1997), the high court recognized a *Monell* claim based upon inadequate scrutiny of an officer's background, holding "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id.* at 410.

In the instant case, this is precisely what the Plaintiffs' have plead – adequate scrutiny of the ongoing job performances of Defendant Tshamba would have led a reasonable policymaker to conclude that the decision to retain Defendant Tshamba might result in depriving one, such as the Plaintiffs, of their constitutional rights. The allegations regarding Defendant Tshamba make quite clear that Defendant Tshamba had a known history of constitutional violations and other misconduct. The MCC failed to properly scrutinize Tshamba's prior conduct and improperly retained Tshamba.

As this stage of the proceedings, the Plaintiffs have sufficiently stated a *Monell* cause of action for inadequate scrutiny.

The "condoned custom" form of *Monell* liability has been addressed on numerous occasions in the Fourth Circuit. *Spell v. McDaniel*, 824 F. 2d 1380, (4th Cir. 1987); *Lanford v. Prince George's County*, 199 F. Supp. 2d 297, 304 (D. Md. 2002).  The lengthiest discussion perhaps occurred in *Spell*, in which the Court described the sum and substance of a condoned custom claim.

The following principles of law can be distilled from that opinion: (a) "Custom and usage … may be attributable to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees," *Spell* at 1387; (b) "Constructive knowledge may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them," *Id.*; (c) Constructive knowledge may be inferred from the widespread extent of the practices, general knowledge of their existence and official duty of responsible policymakers to be informed, or combinations of these," *Id.* at 1391; (d) "Municipal fault for allowing such a developed 'custom or usage' to continue requires (i) actual or constructive knowledge of its existence by responsible policymakers and (ii) their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices," *Id.*; and (e) A sufficient causal connection between the 'municipal custom and usage' and the specific violation" must be established. *Id.*

In the instant case, there can be no doubt but that the Plaintiffs' allegations are sufficient to state a cause of action for *Monell* liability based on the condoned custom theory.  The Complaint, as indicated *supra*, alleges that the Mayor and City Council had actual knowledge of repeated misconduct by Defendant Tshamba.

The Complaint adequately address the failures of the Mayor and City Council to correct or stop the misconduct as is discussed *infra,* and that they acted with specific intent or deliberate indifference. Finally, the alleged facts and reasonable inferences to be drawn therefrom indicate the existence of a sufficient causal connection between the 'municipal custom and usage' and the specific violation.

It is well-settled that "the inadequacy of police training my serve as a basis for §1983 liability…." Such liability arises only "when the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Ohio*, 489 U.S. 378, 388(1989). *Bryan County v. Brown*, *supra*, similarly held:

> "If a [training] program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action--the 'deliberate indifference'--necessary to trigger municipal liability."

*Id.* at 407.

In the instant case, the Plaintiffs have alleged the essential elements of this claim: that the MCC had and exercised policymaking authority for the BPD with regard to the training, supervision, control and disciplining of Defendant Tshamba (¶10); and that they failed to relieve him of his duties when they knew or should have known, of his unconstitutional conduct or that further training was necessary to prevent constitutional violations and that their continued adherence to then existing training policies was inadequate.

The one remaining issue raised by the MCC concerns their immunity from claims based on state constitutional violations. The Court of Special Appeals dealt with this issue in *Prince George's County v. Longtin,* 190 Md. App. 97, 130-131, 988 A.2d 20 (2010) wherein it stated:

> " In our view, these arguments miss the mark. Just as a county ordinance can violate the state constitution, so too, in the words of § 1983, can a "regulation, custom, or usage." In addition, given the almost uniquely expansive reach of Maryland's constitutional tort remedy, where no official or local governmental immunity is possible, *see* n. 27 (which is set forth herein parenthetically: Maryland is only one of a "handful of states whose high court refuses to immunize constitutional torts." Jennifer Friesen, *State Constitutional Law* § 8:08(6) (4th ed. 2006). See also *Dorwart v. Caraway*, 312 Mont. 1, 58 P.3d 128, 139 (2002) (In cases involving claims for violations of state constitutional rights, "most state courts which have considered the issue have followed the federal law of qualified immunity")) and accompanying text, we think it highly unlikely that Article 24 contains any exemption from liability for an unconstitutional pattern or practice. Finally, we note that the Court of Appeals in *DiPino v. Davis*, 354 Md. 18, 53, 729 A.2d 354 (1999), set forth the rationale for making local governments liable for the constitutional torts of their employees. Quoting favorably from *Brown v. State*, 89 N.Y.2d 172, 652 N.Y.S.2d 223, 674 N.E.2d 1129, 1142-43 (1996), it recognized that the government is appropriately held answerable for the acts of its officers and employees because it can avoid such misconduct by adequate training and supervision and avoid its repetition by discharging or disciplining negligent or incompetent employees.

According to the U.S. Department of Justice, *see supra*, pp. 129-30, 988 A.2d at p. 39, violation of these duties can be trademarks of a pattern or practice of police misconduct. In our view, these deficiencies, when coupled with a record such as that presented here, can lead to liability by a local government for a violation of Article 24"

                                                Respectfully submitted,

                                                _____*/s/*_____
A. Dwight Pettit, Bar ID 01697
Law Offices of A. Dwight Pettit, P.A.
3606 Liberty Heights Avenue
Baltimore, MD  21201
(410) 542-5400
(signed by Allan B. Rabineau with the permission of A. Dwight Pettit)

                                                _____*/s/*_____
Allan B. Rabineau, Bar ID 01636
401 East Pratt Street, Suite 2252
Baltimore, MD  21202
(410) 837-9150

Attorneys for Plaintiffs