UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern District

| | |
|---|---|
| **LOREN BROWN, et al** | * |
| Plaintiffs | * |
| -v- | *   Civil no.: RDB-11-00609 |
| **OFFICER GAHIJI A. TSHAMBA, etal** | * |
| Defendants | * |
| | * |

*********************************

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS, BALTIMORE CITY POLICE DEPARTMENT, BALTIMORE CITY POLICE COMISSIONER BEALEFELD AND JOHN DOES**

**FACTS**

On January 14, 2011 the Plaintiffs, Loren Brown and Vivian Scott, individually and as Personal Representatives of the Estate of Tyrone Brown, Loren Brown on behalf of her minor daughter, …., and Jacquetta Taylor on behalf of her minor son, …., filed suit in the Circuit of Maryland for Baltimore City against the Mayor and City Council of Baltimore ("MCC"), as well as the State of Maryland (the "State"), Baltimore Police Commissioner Bealefeld, the Baltimore Police Department ("BPD"), John Doe(s) Officers and Gahiji Tshamba (hereinafter "Tshamba") for the June 5, 2010 murder of Tyrone Brown ("Mr. Brown"). The Plaintiffs brought suit against the above named Defendants for Wrongful Death, Violation of Articles 24 and 26 of the Maryland Declaration of Rights, Survivor's Action, Assault, Battery, False Imprisonment, False Arrest, Intentional Infliction of Emotional Distress, Funeral Expenses and for violations of 42

1

U.S.C. §1983. The MCC removed the case to the United States District Court for the District of Maryland.

The action is based on events which occurred on the early morning hours of June 5, 2010, when Mr. Brown was with his sister, Chantay Kangalee, and a neighborhood friend. As the trio was standing in line outside of Eden's Lounge located at 15 West Eager Street, Baltimore, Maryland, Mr. Brown had an exchange with one of Defendant Tshamba's female companions. Her expression of displeasure led Defendant Tshamba to turn around, and he began shouting threats at Mr. Brown and simultaneously drew his gun pointing it at Mr. Brown. Mr. Brown repeatedly apologized to Defendant Tshamba. With his gun drawn, Tshamba backed Mr. Brown down an alley out of the eyesight of the police on the scene and others who were in the area. While Mr. Brown had his hands raised in the air and attempted to calm down the enraged Defendant Tshamba, Defendant Tshamba fired his gun 13 times with 12 of the shots striking Mr. Brown and ultimately killing him (¶¶ 14-27 of Plaintiffs' Complaint).

The policies and regulation of the Defendants, MCC, the BPD, and Baltimore Police Commissioner Bealefeld, required Baltimore City Police Officers to carry their service weapons while they are off duty in the City limits (¶41 of Plaintiffs' Complaint). The MCC, the BPD, and Baltimore Police Commissioner Bealefeld are empowered to ensure that persons that have the authority to carry loaded weapons as part of their official capacity are fit to do so. The MCC, the BPD, and Baltimore Police Commissioner Bealefeld failed to supervise and to take the appropriate action of discharging Defendant Tshamba once they were made aware of several serious incidents, as stated in paragraph 43 of the Plaintiffs' Complaint, in which Defendant Tshamba displayed gross lapses in judgment.

Four such incidents that are listed in the complaint in ¶43 were: (1) a 1998 shooting of a suspect in the back that he mistakenly believed had opened fire, (2) a 2001 arrest in which he transported a woman to Central Booking after a routine traffic stop because she allegedly signed a ticket improperly. The City later agreed to pay the woman an undisclosed settlement as a result of her serious injury from Defendant Tshamba's conduct; (3) a 2005 shooting of a 17 year old in the foot while Defendant Tshamba's blood alcohol level was significantly over the legal limit, and (4) a 2006 crash in which he lost control of his car which was uninsured and unregistered and jumped the curb at a gas station running into a light pole and a parked van.

The Defendants' failure to take the necessary action against Defendant Tshamba allowed him to continue to have lapses in judgment which led to the wrongs alleged in the present case.

## STANDARD OF REVIEW

"[T]he purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Wright & Miller, Federal Practice and Procedure:* Civil 3d§1356 @ p. 354 citing, among other cases, the cases of *Miller v. Pacific Shore Funding,* D.C.Md. 2002, 224 F. Supp. 2d 977, *affirmed* C.A.4th, 2004, 92 Fed. Appx. 933; *Eniola v. Leasecomm Corp.,* D.C.Md. 2002, 214 F. Supp.2d 520; *Svezzese v. Duratek, Inc.,* D.C.Md. 2002, 2002 WL 1012967, *affirmed* C.A.4th, 2003, 67 Fed. Appx. 169; *HQM, Limited v. Hatfield*, D.C.Md. 1999, 71 F.Supp.2d 500; *Smith-Berch, Inc. v. Baltimore County, Maryland,* D.C.Md.1999, 68 F. Supp.2d 602; *Maryland Minority Contractor's Ass'n, Inc. v. Maryland Stadium Authority,* D.C.Md.1998, 70 F.Supp.2d 580, *affirmed* C.A.4th, 199, 198 F.3d 237; *Bender v. Suburban Hosp.*, D.C.Md.1998, 998 F.Supp. 631, *affirmed* C.A.4th, 1998, 159 F.3d 186; *National Fed'n of the Blind, Inc. v. Loompanics*

*Enterprises, Inc.,* D.C.Md.1996, 936 F.Supp. 1232; *Ginsubrg v. Agora, Inc.,* D.C.Md.1995, 915 F.Supp. 733; *Foxglenn Investors Ltd. Partnership v. Housing Authority for Prince George's County,* D.C.Md.1993, 844 F.Supp. 1078 *affirmed* C.A.4th, 1994 35 F.3d 947; *Pinder v. Commissioners of Cambridge in the City of Cambridge,* D.C.Md.1993, 821 F.Supp. 376, reversed on other grounds C.A.4th, 1995, 54 F.3d 1169.

"[F]or purposes of the Motion to Dismiss (1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader…" *Wright & Miller, Federal Practice and Procedure:* Civil 3d §135 @ p. 417, citing, among other cases, the cases of *Miller v. Pacific Shore Funding,* D.C.Md. 2002, 224 F. Supp. 2d 977, *affirmed* C.A.4th, 2004, 92 Fed. Appx. 933; *Kress v. Food Employers Labor Relations Ass'n,* D.C.Md.2002, 217 F.Supp.2d 682; *Eniola v. Leasecomm Corp.,* D.C.Md. 2002, 214 F. Supp.2d 520*; Gray v. Metts*, D.C.Md.2002, 203 F.Supp.2d 426; *Rhee Bros., Inc. v. Han Ah Reum Corp.,* D.C.Md.2001, 178 F.Supp2d 525; *U.S. ex rel Ackley v. International Bus. Machs. Corp*., D.C.Md. 2000, 110 F.Supp.2d 395.

The Supreme Court has gone so far as to hold in *Atlantic Corporation v. Twombly,* 127 S.Ct. 1955, 550 U.S. 544, 167 L.Ed 2d 929 (2007) that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the Complaint."

## **ARGUMENT**

In their Motion to Dismiss, Defendants Baltimore Police Department ("BPD"), Frederick Bealefeld ("Bealefeld") and John Doe(s) erroneously assert that they are entitled to dismissal as a matter of law. However, to the extent that they have reviewed Plaintiffs' Complaint in its

entirety, Defendants completely ignore and fail to address factual allegations which are stated in the Complaint and are pertinent to Defendants' direct liability in this case[1].

The facts alleged in the Complaint and the rational inferences that one may draw from the facts alleged, demonstrate cognizable claims against the Defendants, who notwithstanding their knowledge of Defendant Tshamba's history of excessive, deadly force and abuse of police powers prior to the killing at issue herein, indifferently, tortiously and unconstitutionally acted and failed to act:

(1) to remove Defendant Tshamba from the police force;

(2) to suspend/revoke Defendant Tshamba's weapons privileges;

(3) to adequately review/consider Defendant Tshamba's fitness for duty;

(4) to place Defendant Tshamba on administrative duty;

(5) to properly train and supervise Defendant Tshamba;

(6) to properly discipline and or conduct adequate internal review and/or trial board proceedings; and/or

(7) to endow a dangerous individual with police powers, weapon, ammunition and the express authority to use deadly force in his discretion.

These acts and lapses are either directly set forth in the Complaint and/or easily inferred.

**STATE ARGUMENTS**

The BPD first alleges that it is immune from suit under state law and asserts as

---

1 Defendants argue at various points in their memorandum that they have no vicarious liability by reason of a *respondeat superior* theory for the acts of Defendant Tshamba. Such an allegation is not the Plaintiffs' central legal theory with respect to these Defendants. The Plaintiffs have clearly asserted direct liability on the part of these Defendants, whose deliberately indifferent acts and omissions culminated in the decision to permit a menacing Officer, known for excessive, unwarranted force, intoxication, abuse of citizens and of his police powers, to continue to have the authority, power and equipment to use deadly force.

authority therefore the case of *Baltimore Police Department v. Cherkes* 140 Md. App 282, 336, 780 A.2d 410 (2001).

The *Cherkes* court was quite specific and limited in its ruling to the case before it and concluded that sovereign immunity for the BPD extended only to:

1) "the ordinary tort claims (direct respondeat superior liability)", and

2) the "respondeat superior State constitutional tort claims"

The Plaintiffs in the present case assert neither ordinary tort claims nor violation of State constitutional claims based upon a theory of *respondeat superior*. The claims contained in the present cause of action are either intentional torts or constitutional torts based upon independent actions of all of the Defendants .

Maryland Court and Judicial Proceedings §5-301 (referred to as the Local Government Tort Claims Act) clearly defines the Baltimore Police Department as a "Local Government" at §5-301(d)(21).

Also the appellate Courts of Maryland have held that employees of the Baltimore City Police Department are local government employees under the Local Government Tort Claims Act. *Houghton v. Forrest,* 183 Md. App 15, 959 A. 2d 816 (2008, *cert granted* 407 Md 529, 967 A.2d 182, affirmed in part, vacated in part 412 Md 578, 989 A.2d 223 (2010); *Smith v. Danielczyk,* 400 Md 98, 928 A.2d 795 (2009).

The issue of the independent action of the BPD with respect to the constitutional claims will be addressed later in this memorandum at page 10.

The BPD argues that it is not an arm and instrumentality of the MCC, but rather of the State of Maryland, and therefore is immune from suit. The Complaint alleges with specificity in paragraph 10:

> "Defendant, BALTIMORE POLICE DEPARTMENT (hereinafter 'BPD')
> is a fully operational police department, has strong practical links to and was,
> at all times relevant to this action, acting under the auspices of Defendant, Mayor
> & City Council, and Defendant Bealefeld. The Mayor appoints the Commissioner
> Of the Police Department with the advice and consent of the City Council. The
> City Council holds hearings on Police Department policy and sets the Police Department
> budget. At all times relevant herein, BPD exercised control over and influenced
> the policies, practices and customs of its police force, as well as the training,
> supervision, control and discipline of its police officers. BPD is and was the
> employer of the Defendant Tshamba. The BPD is sued in its official capacity."

The issue of whether the BPD is an arm of the City or the State has been addressed by this Court in *Alderman v. Baltimore City Police Department*, 952 F. Supp. 256, 258-59 (1997). The Court found that "the City exercises a significant degree of control over the BCPD[2]," and concluded that the "BCPD is an arm of the City, not the state." *Alderman* is significant because it described a framework to evaluate whether an entity is to be categorized as a state or local entity. The *Alderman* Court stated that the following factors should be considered (1) whether the state treasury will pay the judgment, (2) whether the agency exercises a significant degree of autonomy from the state, (3) whether the agency is involved in local versus statewide concerns, and (4) how the agency is classified under state law. The first of these factors is largely, if not wholly dispositive. *Id.* at 258.

Based on these factors, the *Alderman* Court concluded that the BPD is an agency of the MCC. The Court reasoned as follows: (a) that there was no evidence to show that the state

---

[2] The BCPD is simply another way of referring to the BPD.

7

treasury would be affected, but rather that the City of Baltimore has an indemnity agreement with BCPD employees; (b) that the MCC exercises significant control over the BCPD, for example, in determining how many employees to hire, reviewing employment applications, setting salaries, offering medical insurance, providing legal defense when sued, indemnify for legal expenses and conducting the training of officers at the BCPD academy. The City further appoints the Police Commissioner, expects regular reports, and has removal power over the Commissioner; (c) that the functions of the BCPD are unquestionably local in that its law enforcement duties and powers are limited to the City; (d) that although state law classifies the BCPD as a state agency, this determination is not, and should not be considered, determinative of the issue of agency and it would be a mistake to treat state court decisions as so. *Id.*

Next, in arguing that public official immunity protects Bealefeld and John Doe(s) and basing such a statement upon *Cherkes, supra*, the Defendants once again misinterpret the holding in *Cherkes*. *Cherkes* does not apply to either intentional torts or violations of constitutional rights as alleged in the Complaint.

The Maryland Court of Appeals in *Lee v. Cline,* 384 Md. 245 at p. 305, 863 A.2d 297 (2004), recited that

> [T]his Court has consistently held that Maryland common law qualified immunity in tort suits, for public officials performing discretionary acts, has no application in tort actions based upon alleged violations of state constitutional rights or tort actions based upon most so-called "intentional torts. " The Maryland public official immunity doctrine is quite limited and is generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct. See e.g., *Muthukumarana v. Montgomery County*, 370 Md. 447, 478-481, 805 A.2d 372, 390-392 (2002) (discussing the public official immunity doctrine); Lovelace v. Anderson, supra, 366 Md. at 705-706, 785 A.2d at 734 ("[T]he defense of public official immunity generally applies only to negligent acts …").

Defendants next argue that Plaintiffs fail to state a cognizable claim against Bealfeld and the John Doe(s) as Plaintiffs state no facts to remove the veil of public official immunity that protects them.

Public Official Immunity does not protect Defendant Bealefeld and Defendants John Doe(s) from suit in the instant case. Public Official Immunity is not an absolute. If the actions of the public official fall into the category of malice or gross negligence, the immunity is not applicable. Gross negligence has been equated with a "wanton or reckless disregard for human life or the rights of others". See *Wells v. State,* 100 Md. App. 693, 705, 642 A. 2d 879 (1994) and cases cited therein. Viewing the evidence in the light most favorable to the plaintiffs and drawing all reasonable inferences of facts in their favor, the Complaint sufficiently sets out an issue of gross negligence.

Furthermore, this argument of Defendants was dealt with at p. 8 of this Memorandum of Law wherein in the case of *Lee v. Cline,* 384 Md. 245, 863 A.2d 297 (2004) was referenced for the proposition that public official immunity does not apply to the violations of law alleged.

Also previously expressed in this memorandum of law, the Complaint is not based on a theory of vicarious liability, but on the direct actions of the various defendants.

## FEDERAL ARGUMENTS

Defendants mistakenly conclude that Defendant Tshamba's conduct in using deadly force was purely criminal, personal and beyond the scope of his police powers. For the purposes of this Motion to Dismiss, the Plaintiffs' assertion in paragraph 5 of their Complaint that Defendant Tshamba was acting in his official capacity must be assumed to be true. The Defendants would have the Court resolve a conflict in the evidence at this preliminary stage of the proceedings

9

which is not the purpose of a motion to dismiss (see **Standard of Review**, page 3 of this memorandum).

The Defendants are correct that a Monell claim cannot be based upon *respondeat superior* liability; however, the Plaintiffs are not a pursuing a Monell claim based upon *respondeat superior* liability. To be absolutely clear, the Plaintiffs are not contending that the BPD, Bealefeld and the John Doe Officers are vicariously liable under §1983 merely because of alleged employment relationship with Defendant Tshamba. Rather, the liability of BPD, Bealefeld and the John Doe Officers as is set forth in the Complaint, is premised solely upon their own acts and omissions. As to Monell liability, the Defendants' argument that the Plaintiffs have failed to allege facts sufficient to state a Monell claim is flawed.

Liability for Policy or Custom

"Municipal liability results only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Spell v. McDaniel*, 824 F. 2d 1380, 1385 (4th Cir. 1987), citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 692-94 (1978). Municipal policy is often expressed in the local ordinances and regulations, but "may also be found in formal or informal ad hoc decisions of municipal officials authorized to make an implement municipal policy." *Spell* at 1385, citing *Monell* at 694. Policy "in this context implies most obviously and narrowly a 'course of action consciously chosen from among various alternatives respecting basic governmental functions, as opposed to episodic exercises of discretion in the operational details of government." *Spell* at 1386

Official policy, however "is not the only basis for imposing municipal liability. 'Custom or usage' in the specific language of §1983, may also serve." *Spell* at 1386, citing *Monell* at 690-

91. *Carter v. Morris*, 164 F. 3d 215, 218 (4th Cir. 1999), "a municipal custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.,* citing *Monell* at p. 691. "Because municipal liability," the *Spell* Court remarked, arises only "when the municipality itself can be directly charged with fault for a constitutional violation, it results only when policy or custom … is (1) fairly attributable to the municipality as its 'own' and is (2) the "moving force behind the particular violation." *Id.* at 1387. Some of the policy decisions, customs and usages by the BDP and Bealfeld, were set forth in the Complaint and in relevant portion is described in ¶41 as follows:

> "41. The policies and regulations of Defendants, BPD, and/or Bealefeld and/or MCC"s generally require City officers to carry their service weapons while they are off duty inside the City limits."

As the above is the policy of the Baltimore Police Department it is a regulation that must be followed by all officers. There is nothing in the policy that prohibits officers from taking their weapons into establishments or situations where alcohol is served. Therefore, the BDP, Bealefeld, and the John Does knew that being an officer that Defendant Tshamba would be carrying a weapon on and off of duty. They also knew that this policy would apply to Tshamba whose prior misdeeds were stated in the Complaint at ¶43. However the policy was not changed and there were no actions taken to prevent Defendant Tshamba from repeating the same or similar behavior of firing his weapon while intoxicated.

Relevant case law indicates that each of these acts and/or omissions of the BPD, Bealefeld, and the John Does may serve as basis for a *Monell* claim. The first basis of *Monell* liability, set forth in ¶ 43 of the Complaint, is essentially that the BDP, Bealefeld, and John Does

did not adequately scrutinize the background of Defendant Tshamba. This basis can be referred to as "inadequate scrutiny."  The next basis of *Monell* liability is that the BPD, Bealefeld, and the John Does acquiesced in, tolerated, and failed to adequately correct and remedy the wrongful, improper and unconstitutional acts and/or omissions of Defendant Tshamba, whose misconduct was persistent and widespread. This basis can be referred to as "condoned custom."

Finally, the third basis for the liability of the BPD, Bealefeld, and the John Does was that they failed to properly and adequately supervise, discipline, train or re-train, and/or monitor Defendant Tshamba in the face of persistent and widespread misconduct.  This falls under the category of "deficient training." Each of these actions or inactions is a valid and viable ground upon which a *Monell* claim may be based and will be discussed in turn.

In *Bryan County v. Brown*, 520 U.S. 397, 410 (1997), the high court recognized a *Monell* claim based upon inadequate scrutiny of an officer's background, holding "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id.* at 410.

In the instant case, this is precisely what the Plaintiffs  have plead – adequate scrutiny of the ongoing job performance of Defendant Tshamba would have led a reasonable policymaker to conclude that the decision to retain Defendant Tshamba might result in depriving one, such as the Plaintiffs, of their constitutional rights.  The allegations regarding Defendant Tshamba make quite clear that Defendant Tshamba had a known history of constitutional violations and other misconduct.  The BPD, Bealefeld, and the John Does failed to properly scrutinize Tshamba's prior conduct and improperly retained Tshamba.

At this stage of the proceedings, the Plaintiffs have sufficiently stated a *Monell* cause of action for inadequate scrutiny. The "condoned custom" form of *Monell* liability has been addressed on numerous occasions in the Fourth Circuit. Among the cases are *Spell v. McDaniel*, 824 F. 2d 1380, (4th Cir. 1987) and *Lanford v. Prince George's County*, 199 F. Supp. 2d 297, 304 (D. Md. 2002). The most significant discussion, perhaps, appears in *Spell*, in which the Court described the sum and substance of a condoned custom claim.

The following principles of law can be distilled from that opinion: (a) "Custom and usage … may be attributable to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees," *Spell* at 1387; (b) "Constructive knowledge may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them," *Id.*; (c) "Constructive knowledge may be inferred from the widespread extent of the practices, general knowledge of their existence and official duty of responsible policymakers to be informed, or combinations of these," *Id.* at 1391; (d) "Municipal fault for allowing such a developed, custom or usage to continue requires (i) actual or constructive knowledge of its existence by responsible policymakers and (ii) their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices," *Id.*; and (e) "A sufficient causal connection between the 'municipal custom and usage' and the specific violation" must be established. *Id.*

In the instant case, the Plaintiffs' allegations are sufficient to state a cause of action for *Monell* liability based on the condoned custom theory. The Complaint, as indicated *supra*, alleges that the BPD, Bealefeld, and the John Doe(s) had actual knowledge of repeated

misconduct by Defendant Tshamba. The Complaint adequately address the failures of the BPD, Bealefeld, and the John Does to correct or stop the misconduct as is discussed *infra*, and that they acted with specific intent or deliberate indifference. Finally, the alleged facts and reasonable inferences to be drawn therefrom indicate the existence of a sufficient causal connection between the "municipal custom and usage" and the specific violation.

The Defendants allege that Plaintiffs do not state actual facts about the alleged policies and customs that the BPD violated or the Department's deliberate indifference to them.

The specific policies which the Complaint alleges that resulted in the death of Mr. Brown are indicated in paragraph 41, paragraph 43 and paragraph 44 and are set forth below:

> 41. The policies and regulations of Defendants, BPD, and/or Bealefeld and/or MCC's generally require City officers to carry their service weapons while they are off duty inside the City limits.
>
> 43. The Defendants, BPD, and/or Bealefeld and/or MCC, and other high ranking members of the Police Department, including colonels, majors, precinct captains, and lieutenants and sergeants engaged in supervision of police patrol activities knew or should have known of Defendant Tshamba's prior incidents which certainly raised questions of Defendant's fitness for duty. These incidents include:
>
>> A. September, 2005 Defendant Tshamba shot a man in the foot while Defendant was intoxicated. That shooting was ruled justified but Defendant was disciplined internally for having his gun while intoxicated.
>>
>> B. In July, 1998 a disputed incident which was initially reported

that Defendant Tshamba mistakenly believed the suspect he was chasing had opened fire' and he shot the suspect in the back.

C. In 2001, Defendant Tshamba arrested a woman after a routine traffic stop and sent her to Central Booking and Intake Center for 'allegedly signing the ticket improperly for which an undisclosed civil settlement was made with the City in 2005.

D. In 2006, Defendant Tshamba was driving at 2:00 a.m. in the 4100 block of Pulaski Highway and was involved in an accident. He was driving without insurance or registration. Defendant Tshamba's vehicle hopped the curb and crashed into a van and a City light pole at a gas station. The Defendant required treatment for his injuries and was transported by ambulance to a local hospital.

44. Based on Defendant Tshamba's history and violation of law, Defendant should have been relieved of his duties completely.

The second allegation contained in the "Introduction" portion of the Defendants' Motion to Dismiss has two parts. The first relates to their assertion that it is undisputed that the case involves the actions of an off-duty police officer. This is not correct.

In their final argument (#4), Defendants assert that the claims against Bealefeld and the John Does in their official Capacity must be dismissed because they "are not vicariously liable and cannot be sued under the theory of *respondeat superior*." The Plaintiffs' claim goes far beyond the contention that Bealefeld and the John Does are vicariously liable under §1983 because of an alleged employment relationship with Defendant Tshamba. The liability of BPD, Bealefeld and the John Does as is set forth in the Complaint is premised upon their own acts and

omissions as supervisors of the Defendant Tshamba as previously expressed in this Memorandum. In *Shaw v. Stroud*, 13 F. 3d 791,798 (4th Cir. 1994), the Court stated that "the principle is firmly entrenched that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." This liability, the Shaw Court continued "is not premised upon respondeat superior but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Id.*, citing *Slakan v Porter*, 737 F.2d 368, 372-73 (4th Cir. 1984).

A claim for supervisory liability requires proof of three elements: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw at 799.

## **CONCLUSION**

For the reasons expressed in this Memorandum, Plaintiffs respectfully request that Baltimore Police Department, John Doe(s) and Frederick Bealefeld, II's Motion to Dismiss Plaintiffs' Complaint be denied.

Respectfully submitted,

_____ */s/* _____
A. Dwight Pettit, Bar ID 01697
Law Offices of A. Dwight Pettit, P.A.
3606 Liberty Heights Avenue
Baltimore, MD  21201
(410) 542-5400
(signed by Allan B. Rabineau with the permission of A. Dwight Pettit)


_____ */s/* _____
Allan B. Rabineau, Bar ID 01636
401 East Pratt Street, Suite 2252
Baltimore, MD  21202
(410) 837-9150

Attorneys for Plaintiffs