IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LOREN BROWN, *et al.*,                          *

    Plaintiffs,                          *

      v.                          *          Civil Action No. RDB 11-00609

OFFICER GAHIJI A. TSHAMBA, *et al.*,          *

    Defendant.                          *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**<u>MEMORANDUM OPINION</u>**

Plaintiffs Loren Brown and Vivian Scott, both individually and in their capacity as Co-Personal Representatives of decedent Tyrone A. Brown's ("Brown") estate, as well as J.B., a minor and daughter of the decedent, and J.B.T., a minor and son of the decedent, bring this civil rights violation and excessive force action against Defendant Officer Gahiji A. Tshamba ("Officer Tshamba") of the Baltimore Police Department (the "BPD").[1] Plaintiffs allege that Brown's civil rights were violated when Officer Tshamba shot and killed Brown. Plaintiffs have also named as defendants Frederick H. Bealefeld, III, the Commissioner of the Baltimore Police Department, and unnamed supervisors of the BPD's Operations Bureau Chain of Command and the Administrative Bureau Chain of Command, in both their individual and official capacities. In addition, Plaintiffs have named the Baltimore Police Department, the Mayor and City Council of Baltimore (the "Mayor and City Council"), and the State of Maryland as defendants.

Currently pending before this Court are two motions to dismiss, one filed by the BPD, Commissioner Bealefeld, and the unnamed supervisors (collectively, the Police Defendants), and a second filed by the Mayor and City Council. The BPD, Commissioner Bealefeld, and the

---

[1] Defendant Officer Tshamba has filed an answer to the Complaint (ECF. No. 15) and has not filed a Motion to Dismiss.

unnamed supervisors contend that the BPD is a state agency and enjoys sovereign immunity under Maryland Law, and alternatively, that the Plaintiffs have failed to state a claim upon which relief can be granted. The Mayor and City Council also contend that the Complaint fails to state a claim upon which relief can be granted and further contend that the City does not exercise sufficient control over the BPD to be held liable for the conduct of the BPD's employees. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons that follow, the Defendants' Motions to Dismiss (ECF No. 7 and 8) are DENIED with regards to the federal claims and GRANTED with regards to the state claims.

BACKGROUND

In ruling on a motion to dismiss, "[t]he factual allegations in the Plaintiff's Complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

**A. The June 5 Shooting**

On June 5, 2010, at approximately 1:30 a.m., Tyrone Brown was standing with his sister and a friend outside of Eden's Lounge on 15 West Eager Street in Baltimore's Mt. Vernon neighborhood. Compl. ¶ 15-16. While standing in line to enter the lounge, Brown allegedly touched a woman standing in front of him. *Id.* ¶ 17. The woman turned around and expressed her displeasure to Brown. Though Brown apologized, the Complaint appears to allege that, a few minutes later, the woman attempted to punch Brown. *Id.* ¶¶ 18, 20.

Plaintiffs claim that Officer Tshamba, who was waiting in line to enter the lounge, *id.* at ¶ 40, turned around, revealed that he was carrying a firearm, and proceeded to shout at and threaten Brown. *Id.* ¶ 21. Officer Tshamba subsequently removed the firearm from his waistband and pointed the weapon at Brown. *Id.* ¶ 22. Brown put his hands in the air,

apologized to Officer Tshamba, and attempted to calm Officer Tshamba down. *Id.* ¶ 23. Officer

Tshamba then allegedly backed Brown down an alley adjacent to the lounge until the two were

removed from the view of police officers in the area and the other individuals waiting outside the

lounge. *Id.* ¶ 24. At some point, Brown's sister approached Brown and Officer Tshamba, but

Brown warned her to stay back. *Id.* ¶ 25. The Complaint claims that after a brief pause, Officer

Tshamba opened fire on the unarmed Brown. *Id.* ¶¶ 25-26. Officer Tshamba fired his weapon

at Brown thirteen times and hit Brown with twelve of the thirteen shots. *Id.* ¶ 26. Brown died as

a result of these injuries. *Id.* ¶ 27.

### B. Officer Tshamba's Alleged Prior Misconduct

Plaintiffs claim that Officer Tshamba was involved in at least three separate instances of

police misconduct and a fourth private incident of misconduct prior to the June 5 shooting at

issue in this case. *Id.* ¶ 43. First, Plaintiffs allege that in 1998, Officer Tshamba shot a fleeing

person in the back, believing that the individual "had opened fire." *Id.* ¶ 43(B). Second,

Plaintiffs claim that in 2001, Officer Tshamba arrested a woman after a routine traffic stop and

unlawfully took the woman to Central Booking for "signing the ticket improperly," which

Plaintiffs contend resulted in an undisclosed civil settlement with Baltimore City. *Id.* ¶ 43(C).

Third, Officer Tshamba allegedly opened fire on another person in September, 2005, shooting

him in the foot. *Id.* ¶ 43(A). According to the Complaint, Officer Tshamba was disciplined for

the 2005 shooting, having been found intoxicated while armed. *Id.* ¶ 43(A). Fourth, Plaintiffs

contend that in 2006 Officer Tshamba drove without insurance or registration, hopped a curve

and crashed his vehicle into a light pole and a van at a gas station. *Id.* ¶ 43(D).

Plaintiffs filed a Complaint against Defendants in this Court on March 7, 2011 asserting

violations of Brown's Fourth and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983.

The Complaint is worded such that there are three "Cases," or categories, of allegations brought against all defendants. The first "Case" asserts claims for wrongful death (Case 1, Count I) and violations of Articles 24 and 26 of the Maryland Declaration of Rights (Case 1, Count II).[2] In "Case 2 - the Survivor's Action," Plaintiffs claim that the failure to properly supervise, train, and/or discipline Officer Tshamba resulted in the shooting death of Brown (Case 2, Count I). Additionally, Plaintiffs again allege violations of Articles 24 and 26 of the Maryland Declaration of Rights (Case 2, Count II). Plaintiffs also assert various common law torts, including battery (Case 2, Count III), assault (Case 2, Count IV), false imprisonment (Case 2, Count V), false arrest (Case 2, Count VI), and intentional infliction of emotional distress (Case 2, Count VII) as well as § 1983 claims for excessive force (Case 2, Count VIII) and deprivation of Federal Rights (Case 2, Count IX). "Case 3" is an action by the Co-Personal Representatives of Brown's estate to recover for funeral expenses. Plaintiffs seek both compensatory and punitive damages.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a Complaint if it fails to state a claim upon which relief can be granted; therefore, a Rule 12(b)(6) motion tests the legal sufficiency of a Complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

A Complaint must be dismissed if it does not allege "enough facts to state a claim to

---

[2] Article 24 of the Maryland Declaration of Rights provides "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.' Md. Const. Declaration of Rights, Art. 24. Article 26 of the Maryland Declaration of Rights provides "[t]hat all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants…to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted." Md. Const. Declaration of Rights, Art. 26.

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under

the plausibility standard, a Complaint must contain "more than labels and conclusions" or a

"formulaic recitation of the elements of a cause of action." *Id.* at 555. Thus, a court considering

a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more

than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1950 (2009). Well-pleaded factual allegations contained in the Complaint are assumed to be true

"even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference.

*See Twombly*, 550 U.S. at 570 (stating that "courts 'are not bound to accept as true a legal

conclusion couched as a factual allegation'" (citations omitted)). Thus, even though Rule 8(a)(2)

"marks a notable and generous departure from the hyper-technical, code-pleading regime of a

prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more

than conclusions." *Iqbal*, 129 S. Ct. at 1950.

To survive a Rule 12(b)(6) motion, the legal framework of the Complaint must be

supported by factual allegations that "raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 555. The Supreme Court has recently explained that "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to

plead a claim. *Iqbal*, 129 S. Ct. at 1949. The plausibility standard requires that the pleader show

more than a sheer possibility of success, although it does not impose a "probability requirement."

*Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1937. Thus, a court must "draw on its judicial

experience and common sense" to determine whether the pleader has stated a plausible claim for

relief. *Id.*

Where a defendant seeks to dismiss a civil rights Complaint, a court "must be especially solicitous of the wrongs alleged" and "must not dismiss the claim unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged*." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)) (emphasis in original); *see also Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

ANALYSIS

**I.      Claims against the State of Maryland**

To the extent Plaintiffs intend to bring claims against the state of Maryland, such claims are barred by the Eleventh Amendment to the United States Constitution.  Under the Eleventh Amendment, a state cannot be sued in federal court by its citizens without the state's consent. *See* U.S. Const. Amend. XI.  *See also Dixon v. Baltimore City Police Department*, 345 F.Supp.2d 512, 513 (D. Md. 2003); *aff'd*, 88 Fed. Appx. 610 (4th Cir. 2004).  Although the State of Maryland has waived its sovereign immunity for certain types of actions brought in state court pursuant to the Maryland Tort Claims Act, *see* Md. Code Ann., State Gov't § 12-104, it has not waived its Eleventh Amendment immunity for actions brought in federal Court, *see* Md. Code Ann., State Gov't § 12-103(2).  *See also, e.g., Hayat v. Fairely*, No. 08-3029, 2009 U.S. Dist. LEXIS 68272, at *22-23 (D. Md. Aug. 5, 2009); *Dixon v. Balt. City Police Dep't*, 345 F. Supp. 2d 512, 513 (D. Md. 2003).  Thus, any claim against the State of Maryland must be dismissed.

**II.      Section 1983 Claims (Case 2—Counts VIII and IX)**

Plaintiffs contend that the failure to properly train, supervise, and/or discipline Officer Tshamba resulted in the alleged § 1983 violations.  Specifically, the Complaint asserts that Officer Tshamba used excessive force and deprived Brown of his federal rights.  Plaintiffs bring

claims under § 1983 against Officer Tshamba, Commissioner Bealefeld, unnamed police supervisors, the BPD, the Mayor and City Council of Baltimore, and the State of Maryland.

Section 1983 provides a remedy against any person who, under color of law, deprives another of rights protected by the United States Constitution. It is well established that a municipality may be found liable under § 1983 where a municipality causes a constitutional deprivation through an official "policy or custom." *See Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658, 690 (1978).[3] The Supreme Court has held that "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 375 (1989) (emphasis in original). A municipality cannot be held liable in a § 1983 action under a theory of *respondeat superior*. *Monell*, 436 U.S. at 694.

Liability may exist absent a direct "policy or custom," however, where liability can "be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees." *See Milligan v. City of Newport News*, 743 F.2d 227, 229-30 (4th Cir. 1984). *See also Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987) (noting that a "condoned custom" theory may be offered as an alternative basis for § 1983 liability). Where the alleged constitutional deprivation results from municipal inaction, "[a] plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 411 (1997). *See also Mason v. Mayor and City Council of Baltimore*, No. 95-41, 1995 WL 168037 at *4 (D. Md. 1995) (stating that "[i]f plaintiffs suing under § 1983 can establish that a 'policy of inaction' exists, and that such a policy was the direct

---

[3] Plaintiffs asserting a so-called *Monell* claim are not subject to a heightened pleading standard. *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993).

cause or moving force behind the alleged constitutional violation, they will be entitled to relief") (citing *Monell*, 436 U.S. at 694). Where the municipality has not directly caused an injury, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Brown*, 520 U.S. at 405. *See also Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (noting that plaintiffs alleging "deliberate indifference" or a "condonation of an unconstitutional custom" must be wary of "slipp[ing] into that forbidden realm" of *respondeat superior*).

### A. Section 1983 Claim Against the Baltimore Police Department

Plaintiffs allege § 1983 violations against the BPD for excessive force (Case 2, Count VIII) and the deprivation of Brown's Federal rights (Case 2, Count IX). Section 1983 requires that a "person" cause the alleged constitutional violation. A state agency is not a "person" for purposes of § 1983 and therefore may not be found liable under the statute. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Although the BPD is traditionally recognized as a state agency, this Court has held that "[t]he Police Department [is] connected with the government of Baltimore City to such an extent as to prevent the Police Department from asserting an Eleventh Amendment Immunity." *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 548 (D. Md. 2003) (citing *Hector v. Weglein*, 558 F. Supp. 194, 197-99 (D. Md. 1982)); *see also Munyiri v. Haduch*, 585 F. Supp. 2d 670, 676 (D. Md. 2008) (finding that the BPD may be held liable under § 1983). Therefore, the BPD is a "person" under § 1983 and may be found liable for violations of the statute.

In the instant case, Plaintiffs have asserted sufficient claims to establish a "deliberate indifference" on the part of the BPD. Plaintiffs claim that Officer Tshamba unlawfully shot a person on two separate occasions prior to shooting Brown, and that on one of these occasions

Officer Tshamba was intoxicated. The allegations as to the history of Officer Tshamba's misconduct on their own are sufficient to state a § 1983 claim against the BPD.

Moreover, Plaintiffs allege that the BPD continued to provide Officer Tshamba with a service weapon, despite Officer Tshamba's apparent history of misconduct. Off-duty officers are prohibited by the BPD from carrying their service weapons while intoxicated and the Complaint also notes that BPD Officers are trained in the use of deadly force and the application of "shoot/no shoot" scenarios. Compl. ¶ 5. One instance in which an intoxicated police officer shoots a person is sufficient to raise serious concerns about the potential for similar force in the future. Officers involved in multiple instances of police misconduct, especially misconduct involving excessive force allegations, should be subjected to a higher level of scrutiny and supervision. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (noting that where police misconduct has "at least . . . been used on several different occasions," a "pervasive" and "unreasonable" risk of constitutional injury may exist.) The Complaint's assertions do not specifically detail how Officer Tshamba was disciplined for his prior misconduct, but such evidence should become available through discovery. Accordingly, the Plaintiffs' allegations sufficiently indicate that the claims are plausible on their face and the BPD's motion to dismiss shall therefore be DENIED with respect to the § 1983 claims.

### B. Section 1983 Claims as to Commissioner Bealefeld and the Unnamed Supervisors

Plaintiffs also assert § 1983 claims of excessive force (Case 2, Count VIII) and deprivation of Federal rights (Case 2, Count IX) against Commissioner Bealefeld and the unnamed supervisors. As to Commissioner Bealefeld and the unnamed supervisors, Plaintiffs contend that the failure to properly train, supervise, and/or discipline Officer Tshamba resulted in the alleged § 1983 violations. The Supreme Court has indicated its willingness to find

supervisory liability where there is an "affirmative link" between the supervisor and the alleged constitutional violation committed by the subordinate. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976). Supervisory liability is "not premised upon *respondeat superior*, but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict.'" *Shaw*, 13 F.3d at 798 (quoting *Slakan v. Porter*, 737 F.2d 368, 372-73 (4th Cir. 1984)). To prevail, "[a] plaintiff must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and an 'an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.'" *Carter*, 164 F.3d at 221 (quoting *Shaw*, 13 F.3d at 799). However, "[w]hen a supervisor investigates a claim of improper police conduct and suspends the offending officer, it simply cannot be said that he is indifferent to the risk of the underlying constitutional violation." *Carter*, 164 F.3d at 221.

With regards to Commissioner Bealefeld, the Maryland Court of Special Appeals has held that "the Baltimore City Police Commissioner is not entitled to Eleventh Amendment immunity because the Police Department is too interconnected with the government of the City." *Chin*, 241 F.Supp.2d at 548 (citing *Blades v. Woods*, 667 A.2d 917, 918-19 (Md. Ct. Spec. App. 1995)). *See also Wilcher v. Curley*, 519 F.Supp. 1, 4 (D. Md. 1980) (stating that "the Commissioner in his official capacity can be subjected to damage awards without offending the Eleventh Amendment"). Although the "the immediate and direct duty to supervise has been delegated . . . the police chiefs have retained the ultimate responsibility for what goes on in the departments." *Id.* at 6 (citing *McClelland v. Facteau*, 610 F.2d 693, 697-98 (10th Cir. 1979)).

As to the unnamed supervisors, the Complaint has sufficiently alleged that one of Officer Tshamba's supervisors knew or should have known about Officer Tshamba's prior misconduct.

The failure to take appropriate remedial action thus plausibly demonstrates a policy of inaction on the part of Commissioner Bealefeld and the unnamed supervisors. Accordingly, Plaintiffs have alleged sufficient facts to establish supervisory liability as to Commissioner Bealefeld and the unnamed supervisors. Therefore, Commissioner Bealefeld and the unnamed supervisors' motion to dismiss will be DENIED as to the § 1983 claims.

### C. Section 1983 Claims Against the Mayor and the City Council

Plaintiffs also assert § 1983 violations for excessive force (Case 2, Count VIII) and deprivation of Brown's Federal rights (Case 2, Count IX) against the Mayor and City Council. As explained above, § 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. Plaintiffs essentially allege that the Mayor and City Council are liable to Plaintiffs because the Mayor and City Council exercise control over the BPD, which employed Officer Tshamba. Plaintiffs further contend that the Mayor and City Council are liable for the actions of Officer Tshamba due to their failure to train, supervise, and/or adequately discipline Officer Tshamba.

As explained above, a municipality may be found liable under § 1983, but only if the municipality causes a constitutional deprivation through an official "policy or custom." *See Monell*, 436 U.S. at 690. However, a municipality's inaction may be a basis for liability where there are "certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens." *Carter*, 164 F.3d at 218 (citing *Harris*, 489 U.S. at 388-89.) Further, there is no limit to the reach of supervisory liability and it can extend "to the highest levels of state government . . . by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked." *Shaw*, 13 F.3d at 798 (citations omitted).

Under Maryland law, the only control that the Mayor and City Council may exercise over the BPD is through the hiring and removal of the BPD Commissioner. *See Mayor & City Council of Baltimore v. Clark*, 944 A.2d 1122, 1131 (Md. 2008) (noting that Baltimore City is a distinct state agency "notwithstanding the Mayor's role in appointing and removing the City's Police Commissioner"). However, this Court has consistently held that the Mayor and City Council's "involvement in and knowledge of the affairs of the Baltimore City Police Department . . . preclude[ ] the use of state sovereign immunity to shield . . . [the] City from liability under § 1983." *Mason*, 1995 WL 168037 at *3 (citing *Hector*, 558 F. Supp. at 199). Therefore, the Mayor and City Council are precluded from asserting state sovereign immunity and are amenable to a § 1983 action.

In the instant case, Plaintiffs allege that the Mayor and City Council knew or should have known about Officer Tshamba's history of police misconduct and that the failure to adequately discipline Officer Tshamba was a causative factor in the alleged shooting at issue. The Complaint claims that Officer Tshamba's prior transgressions should have alerted someone in the decisionmaking process to his likelihood of using excessive force. This Court finds the allegations significant enough that even those individuals removed from the day-to-day operations of the BPD should have known about Officer Tshamba's misconduct. Plaintiffs have pled sufficient factual allegations claiming municipal liability to survive a motion to dismiss for failure to state a claim. Accordingly, the Mayor and the City Council's motion to dismiss will be DENIED as to the § 1983 claims.

III.    **State Law Claims**

   A.     **State Law Claims Against the BPD, Commissioner Bealefeld, and the Unnamed Supervisors**

Plaintiffs bring several State law claims against Defendants BPD, Commissioner Bealefeld, and Officer Tshamba's unnamed supervisors. The State law claims include wrongful death (Case 1, Count I), violations of the Articles 24 and 26 of the Maryland Declaration of Rights (Case 1, Count II and Case 2, Count II), the failure to train, supervise, and or/discipline Officer Tshamba (Case 2, Count I), battery (Case 2, Count III), assault (Case 2, Count IV), false imprisonment (Case 2, Count V), false arrest (Case 2, Count VI), intentional infliction of emotional stress (Case 2, Count VII), and the action to recover for funeral expenses (Case 3). The BPD, Commissioner Bealefeld, and the supervisors move to dismiss Plaintiffs' state constitutional claims on grounds that the BPD and its Officers enjoy certain immunities as a state agency. It is well-established that the BPD "exists as an agency of the State, and therefore enjoys the common law sovereign immunity from tort liability of a State agency." *Baltimore Police Dep't v. Cherkes*, 780 A.2d 410, 424 (Md. 2001); *see also Clea v. Baltimore*, 541 A.2d 1303, 1306 (1988) (holding that "unlike other municipal or county police departments which are agencies of the municipality or county, the Baltimore City Police Department is a State agency"). Sovereign immunity will thus protect both the State and its agencies against common law tort liability, unless the immunity has been waived. *See Maryland-Nat'l Capital Park & Planning Comm'n. v. Kranz*, 308 Md. 618, 622 (Md. 1987). In this case, there is no indication that the BPD has waived its immunity. (*See* BPD Mot. to Dismiss at 5). Accordingly, Defendants' Motion to Dismiss is GRANTED with respect to Plaintiffs' state constitutional claims against Defendants BPD, Commissioner Bealefeld, and the unnamed supervisors (Case 1, Case 2, Counts I-VII, and Case 3).

**B.**      **State Law Claims Against the Mayor and the City Council of Baltimore**

Plaintiffs assert the same tort claims against the Mayor and City Council. Under Maryland law, "[a] local government entity…is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity." *See DiPino v. Davis*, 729 A.2d 354, 369-70 (Md. 1999). The test for determining whether the entity is acting in a governmental capacity turns on whether the activity is to "promote the welfare of the whole public" and is devoid of any "private interest." *Austin v. City of Baltimore*, 405 A.2d 255, 259 (Md. 1979) (citation omitted). The operation of a police force has been consistently recognized as a quintessential government activity. *See Mora v. City of Gaithersburg*, 462 F. Supp. 2d 675, 697 (D. Md. 2006) (citing *Williams v. Prince George's Cnty.*, 157 F. Supp. 2d 596, 604 (D. Md. 2001)). Because the operation of a municipal police force is a governmental activity, the Mayor and City Council are not liable for the tortious conduct of its police force.[4] The common law tort claims against the Mayor and City Council, therefore, warrant dismissal on governmental immunity grounds. Thus, the Mayor and City Council's Motion to Dismiss is GRANTED with respect to the Plaintiffs' State law claims (Case 1, Case 2, Counts I-VII and Case 3).

<u>CONCLUSION</u>

For the reasons stated above, the Defendants' Motions to Dismiss (ECF No. 7 and 8) are DENIED in part (Case 2, Counts XIII and IX) and GRANTED in part (Case 1, Case 2—Counts I-VII, and Case 3).

A separate Order follows.


Dated: July 18, 2011                                    /s/_____
                                                        Richard D. Bennett
                                                        United States District Judge

_____

[4] The City is not immune from indemnifying its officers under the Local Government Tort Claims Act ("LGTCA.") *See Cherkes*, 780 A.2d at 434.